IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JOHN V. BRENEISER, JR.,

        **Plaintiff,**

v.                             **CIV-05-0431 LAM**

JO ANNE B. BARNHART,
Commissioner of Social Security,

        **Defendant.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Plaintiff's *Motion to Reverse or Remand Administrative Agency Decision* (*Doc. 11*).   In accordance with 28 U.S.C. § 636(c)(1) and Fed. R. Civ. P. 73(b), the parties have consented to having the undersigned United States Magistrate Judge conduct all proceedings and enter final judgment in this case.  The Court has reviewed Plaintiff's motion and his memorandum in support of the motion (*Doc. 12*),[1] Defendant's response to the motion (*Doc. 13*), Plaintiff's reply in support of the motion (*Doc. 16*), the pleadings filed in this case and relevant law.  Additionally, the Court has meticulously reviewed and considered the entire administrative record (hereinafter "*Record*" or "*R*.").  For the reasons set forth below, the Court **FINDS** that the decision of the Commissioner of Social Security (hereinafter, "Commissioner") should be **AFFIRMED** and Plaintiff's motion should be **DENIED**.

---

[1]Plaintiff's memorandum in support of his motion is titled, "***Plaintiff's Motion for Reversal or Remand of Administrative Agency Decision***" (*Doc. 12*) but is, in fact, a supporting memorandum.

# I.  Procedural History

On January 2, 2003, Plaintiff, John V. Breneiser, Jr., applied for disability insurance benefits. (*R. at 45-47.*)    In connection with his application, Plaintiff alleged a disability since December 10, 2002, due to Posttraumatic Stress Disorder (hereinafter, "PTSD").[2]  (*R. at 45, 64.*) Plaintiff's application was denied at the initial and reconsideration levels. (*R. at 27-30, 33-36.*)

Plaintiff requested a hearing and an administrative law judge (hereinafter "ALJ") conducted a hearing on March 30, 2004. (*R. at 37, 233.*)  Plaintiff was present and testified at the hearing. (*R. at 233, 237.*)  Plaintiff was represented by counsel at the hearing.  (*R. at 233, 235.*)  Daniel Moriarty, a vocational expert (hereinafter, "VE") retained by the Commissioner, also testified at the hearing. (*R. at 233, 262-279*).  On August 6, 2004, the ALJ issued his decision in which he found that Plaintiff was not disabled at step four of the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520, because he could still perform his past relevant work as a security guard.  (*R. at 17-18.*)[3]

---

[2]"The essential feature of Posttraumatic Stress Disorder is the development of characteristic symptoms following exposure to an extreme traumatic stressor involving direct personal experience of an event that involves actual or threatened death or serious injury, or other threat to one's physical integrity; or witnessing an event that involves death, injury, or a threat to the physical integrity of another person; or learning about unexpected or violent death, serious harm, or threat of death or injury experienced by a family member or other close associate (Criterion A1).  The person's response to the event must involve intense fear, helplessness, or horror (or in children, the response must involve disorganized or agitated behavior) (Criterion A2).  The characteristic symptoms resulting from the exposure to the extreme trauma include persistent reexperiencing of the traumatic event (Criterion B), persistent avoidance of stimuli associated with the trauma and numbing of general responsiveness (Criterion C), and persistent symptoms of increased arousal (Criterion D).  The full symptom picture must be present for more than 1 month (Criterion E), and the disturbance must cause clinically significant distress or impairment in social, occupational, or other important areas of functioning (Criterion F).  Traumatic events that are experienced directly include, but are not limited to, military combat . . . ."  American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 463 (4th ed., Text Revision, 2000) (hereinafter "DSM-IV-TR").

[3]The ALJ made the following specific findings, *inter alia*, with regard to Plaintiff: (1) he met the disability insured status requirements of the Social Security Act on December 10, 2002, the date he stated he became unable to work, and continued to meet them through the date of the ALJ's decision; (2) he had not engaged in substantial gainful activity since December 10, 2002; (3) he had impairments considered "severe" under Social Security Ruling 96-3p, consisting of PTSD, hypertension and generalized osteoarthritis; (4) he did not have an impairment or combination of impairments that was listed in, or equaled in severity, an impairment listed in Appendix 1 to Subpart P of 20 C.F.R.

(continued...)

With regard to Plaintiff's application for disability insurance benefits, the ALJ concluded that Plaintiff was not entitled to a period of disability or to disability insurance benefits pursuant to the Social Security Act.  (*R. at 18.*)

After the ALJ issued his decision, Plaintiff filed a request for review of the ALJ's decision. (*R. at 9-10.*)  On March 2, 2005, the Appeals Council issued its decision denying his request, making the ALJ's decision the final decision of the Commissioner in his case.  (*R. at 5-8.*)  On April 15, 2005, Plaintiff filed his complaint in this action.[4]

## II.  Standard of Review

The standard of review in this Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether she applied the correct legal standards. *See Hamilton v. Sec'y. of Health & Human Services*, 961 F.2d 1495, 1497-1498 (10th Cir. 1992). If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands and Plaintiff is not entitled to relief.  *See, e.g., Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003).  This Court's assessment is based on a meticulous review of the entire record, where the Court can neither re-weigh the evidence nor

---

[3](...continued)

Part 404; (5) although he had a medically determinable impairment that could reasonably be expected to cause the functional limitations he alleged, the severity of the functional limitations he alleged was not reasonably supported by the credible medical evidence; (6) he retained the residual functional capacity (hereinafter "RFC") to perform "light work," except that he required work without extensive contact with co-workers, supervisors and the public; (7) his past relevant work as a security guard did not require the performance of work-related activities precluded by his functional limitations; (8) his impairments did not prevent him from performing his past relevant work as a security guard; and (9) he was not under a "disability," as defined in the Social Security Act, at any relevant time through the date of the ALJ's decision.  (*R. at 14-17.*)

[4]*See* **Complaint for Reversal or Remand of the Social Security Administration Commissioner's Final Decision**. (*Doc. 1*).

substitute its judgment for that of the agency.  *See Hamlin*, 365 F.3d at 1214; *see also Langley*, 373 F.3d at 1118.  "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Langley*, 373 F.3d at 1118 (citation and quotation omitted); *see also Hamlin*, 365 F.3d at 1214; *Doyal*, 331 F.3d at 760.  An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it."  *Langley*, 373 F.3d at 1118 (citation and quotation omitted); *see also Hamlin*, 365 F.3d at 1214.  While the Court may not reweigh the evidence or try the issues *de novo*, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met."  *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (citations omitted).

For purposes of disability insurance benefits, a person is considered to be disabled if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  A five-step sequential evaluation process has been established for evaluating a disability claim.  *See Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); *see also* 20 C.F.R. § 404.1520.  At the first four levels of the sequential evaluation process, the claimant must show that he is not engaged in substantial gainful activity; that he has a medically severe impairment or combination of impairments; and that either his impairment(s) meet or equal one of the presumptively disabling impairments listed in the regulations under 20 C.F.R. Pt. 404, Subpt. P, App. 1,[5] or that he is unable to perform his past

---

[5]If a claimant can show that his impairment meets or equals a listed impairment, and also meets the duration requirement in 20 C.F.R. § 404.1509 (requiring that an impairment have lasted or be expected to last for a continuous

(continued...)

relevant work.   *See Grogan v. Barnhart*, 399 F.3d at 1261 (10th Cir. 2005); 20 C.F.R. § 404.1520(a)(4).   At the fifth step of the evaluation process, the burden of proof shifts to the Commissioner to show that the claimant is able to perform other work, considering his RFC, age, education, and work experience.   *Id.*

### III.  Plaintiff's Age, Education, Work Experience and Medical History; Vocational Experts; VA Rating Decision

Plaintiff was fifty-six years old on the date of the ALJ's decision.   (*R. at 18, 45, 48.*)  He testified at the administrative hearing that he attended, but did not graduate from, high school. (*R. at 242-243.*)  Plaintiff has past work experience as a security guard.  (*R. at 65, 92.*)  Plaintiff's medical records document treatment by the Albuquerque Veterans Affairs Medical Center (hereinafter, "ABQ-VAMC").  (*R. at 134-137, 193-208*).   Additionally, the *Record* includes an Interim Treatment Update on Plaintiff, dated June 20, 2002, prepared by social worker Farrell Udell for the Santa Fe Vet Center of the United States Department of Veterans Affairs.  (*R. at 217-218.*) The *Record* also documents Plaintiff's participation in a study about treating PTSD conducted by the Department of Psychiatry at the School of Medicine at the University of New Mexico Health Sciences Center (hereinafter, "DOP-UNMHSC") in 2003 and 2004.  (*R. at 189-192.*)  The *Record* also includes a consultative examination, denominated a "Comprehensive Psychiatric Consultation," by psychiatrist Michael F. Gzaskow, M.D., who examined Plaintiff on May 16, 2003.  (*R. at 160-164.*) On February 25, 2003, Jill Blacharsh, M.D., a state agency physician, completed a "Mental Residual Functional Capacity Assessment" (hereinafter, "MRFCA") form for Plaintiff.  (*R. at 138-141.*)  On the same date, Dr. Blacharsh completed a Psychiatric Review Technique (hereinafter, "PRT") form

---

[5](...continued)
period of at least twelve months), he will be found disabled. *See* 20 C.F.R. §§ 404.1520(a)(4)(iii) and 1520(d).

for Plaintiff.  (*R. at 142-155.*)  On June 5, 2003, Scott Walker, M.D., another state agency physician, completed a MRFCA form and a PRT form for Plaintiff.  (*R. at 165-181.*)

As noted above, VE Daniel Moriarty testified at Plaintiff's administrative hearing.  (*R. at 262-279.*)  On December 13, 2004, after the administrative hearing concluded and the ALJ issued his decision, Plaintiff submitted a letter report to the Appeals Council dated September 15, 2004, that was prepared by VE Gerald Belchick, Ph.D.  (*R. at 226-232.*)  In his report, Dr. Belchick opined that Plaintiff "cannot maintain/sustain successful work activities as a security guard or in virtually all other occupations, mainly because of the serious effects [of] Post Traumatic Stress Syndrome" which include "an inability to maintain sufficient pace and persistence, react appropriately to routine work-related changes and stress, and deal appropriately with the public, co-workers and supervisors."  (*R. at 229.*)

The *Record* also contains documentation related to a decision by the United States Department of Veterans Affairs (hereinafter, "VA") that Plaintiff was entitled to veterans disability benefits for service-connected PTSD, effective June 25, 2002.  (*R. at 49-57, 124-133, 219-220.*) These documents include a Rating Decision, dated November 21, 2002, and an Initial Evaluation for Post-Traumatic Stress Disorder (PTSD) Exam dated November 13, 2002, documenting an examination of Plaintiff on November 7, 2002, by Bruce Huyser of the ABQ-VAMC.  (*R. at 127-133*).[6]  The *Record* shows that Plaintiff was assigned a seventy-percent disability evaluation by the VA on November 21, 2002.  (*R. at 124, 126.*)  On December 13, 2002, the VA granted Plaintiff "[e]ntitlement to individual unemployability,"(*R. at 52*) effective December 9, 2002, because it found

---

[6]The *Record* contains duplicates of this Initial Evaluation at 182-188 and 210-216.  The copy in the *Record* at 210-216 is the most legible one.

6

him "unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities."  (*R. at 53; see R. at 49-57.*)

Where relevant, Plaintiff's medical records, the testimony of VE Moriarity, Dr. Belchick's report and the materials related to the VA rating decision for Plaintiff are discussed in more detail below.

## IV.  Discussion/Analysis

Plaintiff contends that the ALJ's decision at step four of the sequential evaluation process that Plaintiff could perform his past relevant work as a security guard is not supported by substantial evidence and is the result of legal error.  Specifically, Plaintiff contends that: (1) in assessing Plaintiff's mental RFC, the ALJ mischaracterized and rejected the opinions of state agency physicians Jill Blacharsh and Scott Walker which was legal error, and the medical evidence cited by the ALJ in support of his mental RFC finding for Plaintiff does not substantially support the finding; (2) in assessing Plaintiff's RFC, the ALJ erred in rejecting the opinion of Plaintiff's treating physician Michael Hollifield, and the ALJ's rationale for rejecting Dr. Hollifield's opinion is not supported by substantial evidence; (3) in assessing Plaintiff's RFC, the ALJ erred in failing to consider and weigh the VA's decision that Plaintiff was disabled from work due to service-connected PTSD; (4) the ALJ erred in his examination of VE Daniel Moriarty at the administrative hearing by failing to include in his hypothetical questions to Mr. Moriarty many of the functional limitations of Plaintiff's impairments that were documented in the medical evidence; (5) the ALJ erred in his examination of Mr. Moriarty at the administrative hearing by omitting from his hypothetical mental RFC for Plaintiff any specifics about the frequency, duration or quality of workplace interactions that Plaintiff was capable of; (6) in his decision, the ALJ failed to address testimony probative of disability given by Mr.

Moriarty at the administrative hearing in response to hypothetical questions posed by Plaintiff's counsel that were supported by substantial evidence; (7) the ALJ failed to make detailed inquiry and required findings regarding Plaintiff's RFC and his past relevant work as a security guard; and (8) the Appeals Council improperly ignored Dr. Belchick's vocational report in deciding whether to grant review of the ALJ's decision.  *See **Plaintiff's Motion for Reversal or Remand of Administrative Agency Decision** (Doc. 12)* at 12-25; *see also **Plaintiff's Reply in Support of His Motion For Reversal or Remand of Administrative Agency Decision** (Doc. 16)* at 1-6.  As relief, Plaintiff asks the Court to reverse the Commissioner's decision and remand this case for an award of benefits or, in the alternative, to remand this case to the Commissioner for reconsideration of the issues raised by Plaintiff.  *See **Plaintiff's Motion for Reversal or Remand of Administrative Agency Decision** (Doc. 12)* at 25.  Defendant argues that the decision of the ALJ should be affirmed because he applied the correct legal standards and his decision is based on substantial evidence.  *See **Defendant's Response to Plaintiff's Motion to Reverse and Remand for a Rehearing** (Doc. 13)* at 3-8.

### A.  Plaintiff's Mental RFC

The ALJ found that Plaintiff had the RFC to perform light work, except that he required work without extensive contact with co-workers, supervisors and the public.  (*R. at 17.*)  Plaintiff does not object to the ALJ's finding that Plaintiff was exertionally limited to light work;[7] however, he does object to the ALJ's mental RFC finding that Plaintiff required work "where there is not extensive contact with co-workers, supervisors, and the general public." (*Id.*)  Plaintiff contends that his PTSD is more functionally limiting than the ALJ found.  Specifically, Plaintiff argues that the ALJ erred in assessing Plaintiff's mental RFC by mis-characterizing and rejecting the opinions of state agency

---

[7]*See **Plaintiff's Motion for Reversal or Remand of Administrative Agency Decision** (Doc. 12)* at 2, n.1.

physicians Blacharsh and Walker which was legal error.  He also argues that the medical evidence cited by the ALJ in support of his mental RFC finding does not substantially support the finding.  The Court disagrees.

### 1.  Opinions of State Agency Physicians

The findings of state agency physicians are not binding on an ALJ; however, they are medical opinion evidence which an ALJ must consider, except as to the ultimate determination of whether a claimant is disabled.  *See* 20 C.F.R. § 404.1527(f)(2)(i).  In this case, in assessing Plaintiff's RFC, the ALJ found that Plaintiff, due to his PTSD, "requires little contact with co-workers, supervisors, and the public."  (*R. at 17.*)  In support of this finding, the ALJ cited the following medical evidence (*Id.*): (1) Bruce Huyser's report of Plaintiff's Initial Evaluation for Post-Traumatic Stress Disorder (PTSD) Exam that was performed on November 7, 2002 (*R. at 127-133; 182-188*); (2) Dr. Gzaskow's Comprehensive Psychiatric Consultation report for Plaintiff dated May 24, 2003 (*R. at 160-164*); (3) Dr. Hollifield's letter to Plaintiff's counsel dated March 4, 2004, regarding Plaintiff's medical condition and related treatment notes (*R. at 189-192*); (4) medical records of Plaintiff's treatment at ABQ-VAMC and a Santa Fe VA clinic for the period from December 3, 2003, to March 15, 2004 (*R. at 193-208*); and (5) the Interim Treatment Update on Plaintiff dated June 20, 2002, prepared by social worker Farrell Udell for the VA's Santa Fe Vet Center (*R. at 217-220*).  The ALJ also cited the opinions of Dr. Blacharsh and Dr. Walker, which he characterized as finding that Plaintiff "required limited social interactions."  (*R. at 17.*)  The ALJ described their opinions, which he

expressly adopted pursuant to Social Security Ruling 96-6p,[8] as being "well-supported by the objective medical evidence."  (*Id.*)

The ALJ did not mischaracterize or reject the opinions of Drs. Blacharsh and Walker regarding Plaintiff's mental RFC, and the *Record* shows that the ALJ's assessment of Plaintiff's mental RFC is consistent with, and supported by, their medical assessments.  As Plaintiff points out, Dr. Blacharsh did find, in her mental RFC assessment of Plaintiff, that he had moderate limitations in the ability to: (1) work in coordination with or proximity to others without being distracted by them; (2) interact appropriately with the general public; (3) ask simple questions or request assistance; (4) accept instructions and respond appropriately to criticism from supervisors; and (5) get along with co-workers or peers without distracting them or exhibiting behavioral extremes.  (*R. at 138-139.*) However, in her narrative explanation of these limitations in the "Functional Capacity Assessment" section of her RFC assessment, Dr. Blacharsh summarized Plaintiff's condition as follows:

> In sum, 54 year old man with PTSD and severe impairments in functioning that do not meet or equal any listing.  Currently and projected to have intact capacity for understanding/memory and adaptability, *and some limitations in capacity for sustained concentration and social interactions.  Should be able to do routine work with limited social contact.*

---

[8]Social Security Ruling 96-6p, 1996 WL 374180, is an interpretive ruling which specifies the consideration to be given by an ALJ and the Appeals Council to administrative findings of fact by state agency physicians.  It provides, in part, that opinions of state agency physicians are to be given weight, "only insofar as they are supported by evidence in the case record, considering such factors as the supportability of the opinion in the evidence including any evidence received at the administrative law judge and Appeals Council levels that was not before the State agency, the consistency of the opinion with the record as a whole, including other medical opinions, and any explanation for the opinion provided by the State agency [physician].  The adjudicator must also consider all other factors that could have bearing on the weight to which an opinion is entitled, including any specialization of the State agency [physician].  Social Security Ruling 96-6p, 1996 WL 374180, at *2.

(*R. at 140-141.*) (emphasis added).  The ALJ's characterization of Dr. Blacharsh's assessment as finding that Plaintiff "required limited social interactions,"[9] does not mischaracterize the foregoing summary assessment and is consistent with it.  Moreover, the ALJ's ultimate conclusion, in his RFC assessment, that Plaintiff required work "where there is not extensive contact with co-workers, supervisors, and the public,"[10] is also consistent with, and supported by, the foregoing summary assessment by Dr. Blacharsh.  Thus, the Court does not find that the ALJ mischaracterized or rejected Dr. Blacharsh's medical opinion regarding Plaintiff's limitations on social interactions.  In support of his argument that the ALJ mischaracterized Dr. Blacharsh's medical opinion and thereby "down-graded" Plaintiff's limitations on social interactions, Plaintiff also cites the testimony of VE Moriarty at the administrative hearing.  Plaintiff argues that in response to a hypothetical question from Plaintiff's counsel containing the actual limitations on social interaction found in Dr. Blacharsh's report, Moriarty opined that the individual's ability to work was "significantly limited."  However, this was not the VE's testimony.  In response to the hypothetical question at issue, which assumed the moderate limitations on social functioning found in the summary conclusion section of Dr. Blacharsh's report,[11] the VE testified that these limitations, taken together, "suggest[] an impairment," and "would diminish a person's ability to work." (*R. at 270-271.*)  The VE did not testify, in response to this hypothetical question, that the individual's ability to work would be "significantly limited," or that the individual could not work as a security guard.  Moreover, on initial questioning by the ALJ, in response to a hypothetical question assuming, consistent with Dr.

---

[9]*R. at 17.*

[10] *Id.*

[11]These limitations are in the *Record* at 138-139.

Blacharsh's narrative explanation of Plaintiff's functional limitations quoted above, that Plaintiff was "limited to non-public work" and "should have a job that has no extensive interaction as part of the job with co-workers and supervisors," the VE testified that Plaintiff could perform his past relevant work as a security guard.  (*R. at 263.*)

In Dr. Walker's mental RFC assessment of Plaintiff, Dr. Walker found, *inter alia*, that Plaintiff had moderate limitations in his ability to: (1) maintain attention and concentration for extended periods; and (2) respond appropriately to changes in the work setting.  (*R. at 165-166.*)  Plaintiff argues that the ALJ implicitly rejected these limitations, without explanation, in concluding that "the medical evidence shows that [Plaintiff's] mental impairment . . . has caused no difficulties in maintaining concentration, persistence, or pace." (*R. at 16-17.*)  After closely reviewing the *Record*, the Court does not agree with Plaintiff that the ALJ ignored or rejected these findings by Dr. Walker. Although the ALJ did not specifically mention these findings in his decision, it is clear that he considered them because he questioned the VE at the administrative hearing about the limitations in Dr. Walker's RFC assessment and accommodated these limitations in his conclusion that Plaintiff had the RFC to perform his past relevant work as a security guard.  At the administrative hearing, Plaintiff's counsel questioned the VE specifically about Dr. Walker's findings that Plaintiff was moderately limited in his abilities to  maintain attention and concentration for extended periods, and respond appropriately to changes in the work setting.  (*R. at 271-272.*)  After this questioning, the ALJ repeated to the VE most of the following narrative explanation of Plaintiff's limitations from the "Functional Capacity Assessment" section of Dr. Walker's RFC assessment:[12]

---

[12]This narrative explanation is in the *Record* at 167.

> This individual is able to work in multiple step types of employment which are marked by the absence of inordinately high levels of concentration demands.  He is able to carry out the demands of these types of employment under ordinary levels of supervision and within reasonable limits of persistence and pace.  Individual is further limited to brief and superficial contact with the general public.  He is able to manage only routine changes in the customary, unskilled work setting.

(*R. at 275-276*).  The ALJ then asked the VE if it was his opinion that a person with these limitations, from Dr. Walker's report, would be able to do the job of security guard and the other jobs the VE testified about, to which the VE answered, "Yes, it would appear they would."  (*R. at 276.*).

### 2.  Medical Evidence and ALJ's Mental RFC Finding

Plaintiff makes a conclusory argument in her supporting memorandum and reply that the medical evidence cited by the ALJ in support of his mental RFC finding for Plaintiff does not substantially support the finding.[13]  However, apart from Plaintiff's argument discussed above that the ALJ mischaracterized and rejected the medical opinion evidence of Drs. Blacharsh and Walker, Plaintiff failed to develop this argument with any specificity in his supporting memorandum and reply. Because this argument is not developed in Plaintiff's supporting memorandum or reply, the Court finds this argument to be waived.  *See Candelario v. Barnhart*, 166 Fed. Appx. 379, 382, n.2 (10th Cir. 2006) (unpublished) (conclusory argument mentioned in brief but not addressed is waived).

---

[13]*See* **Plaintiff's Motion for Reversal or Remand of Administrative Agency Decision** (*Doc. 12*) at 13, 16; **Plaintiff's Reply in Support of His Motion for Reversal or Remand of Administrative Agency Decision** (*Doc. 16*) at 1.

### B.  Opinion of Dr. Hollifield

In 2003 and 2004, Plaintiff participated in a study about the treatment of PTSD with acupuncture that was conducted by DOP-UNMHSC at the University of New Mexico.  (*R. at 189-192, 250-251.*)  On March 4, 2004, Michael Hollifield, M.D. of DOP-UNMHSC, sent a one-page letter to Plaintiff's counsel, without supporting documentation, confirming Plaintiff's participation in the study and providing his medical opinion that Plaintiff was suffering from PTSD.  (*R. at 189.*)  In his letter, Dr. Hollifield stated that his opinion was based on the following: (1) a clinical examination "using a structured clinical interview for diagnosis;" and (2) administration of the "Post-Traumatic Symptom Scale-Self Report," on which Plaintiff scored a thirty-five which Dr. Hollifield said was "consistent with a very severe case" of PTSD.  (*R. at 189.*)  Dr. Hollifield noted in his letter that Plaintiff scored four out of five on the "Sheehan Disability Scales," which Dr. Hollifield said "is to be interpreted that Mr. Breneiser says that due to his post-traumatic stress disorder he is markedly impaired in many or most of his social, work and family responsibilities."  *Id.*

Plaintiff characterizes Dr. Hollifield as a treating physician and argues that in assessing Plaintiff's RFC, the ALJ erred in rejecting Dr. Hollifield's opinion that testing showed Plaintiff to be markedly impaired in many or most of his social, work and family responsibilities.  Plaintiff also argues that the ALJ's rationale for rejecting this opinion, *i.e.* that it should be given little, if any, weight because it was "totally contradictory to all the rest of the medical evidence which does not show near that level of impairment,"[14] was not supported by substantial evidence.[15]

---

[14]This conclusion by the ALJ is in the *Record* at 16.

[15]The ALJ also cited the lack of supporting documentation for Dr. Hollifield's opinion as a reason for discounting the weight of his opinion.  (*R. at 16.*)

14

An ALJ must evaluate every medical opinion in the record. *See* 20 C.F.R. § 404.1527(d). The ALJ must give controlling weight to a treating physician's opinion on the nature and severity of an impairment if the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence" in the record. 20 C.F.R. § 404.1527(d)(2). If an ALJ rejects a treating physician's opinion, he must articulate, "specific, legitimate reasons for his decision." *Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001) (citing *Miller v. Chater*, 99 F.3d 972, 976 (10th Cir. 1996)). The ALJ must consider a series of specific factors in deciding what weight to give any medical opinion. *See Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995).[16]

Assuming, for purposes of discussion, that Dr. Hollifield was Plaintiff's treating physician,[17] the Court does not find error in the ALJ's consideration of his opinion and assignment of little, if any, weight to his opinion. First, Dr. Hollifield did not opine that Plaintiff was markedly impaired in many or most of his social, work and family responsibilities due to PTSD or that testing showed him to be so impaired. Instead, the letter from Dr. Hollifield states that Plaintiff's score on the Sheehan Disability Scales should be interpreted to mean that "Mr. Breneiser *says* that due to his post-traumatic stress disorder he is markedly impaired" in these areas. (*R. at 189* (emphasis added)). Thus, Dr. Hollifield offers an opinion in his letter that testing "is to be interpreted" to show that Plaintiff

---

[16]These factors include whether the physician has examined the claimant; the length and nature of the treatment relationship; the frequency of examinations; the degree to which the opinion is supported by relevant evidence; the opinion's consistency with the record as a whole; and whether the physician is a specialist opining about medical issues related to his or her specialty. *See* 20 C.F.R. § 404.1527(d)(1)-(6).

[17]A treating physician is a physician who has established a long-standing relationship with a social security claimant such that the physician has "obtained a longitudinal picture of [the claimant's] impairment . . . ." *See Doyal v. Barnhart*, 331 F.3d 758, 762-763 (10th Cir. 2003) (citation omitted); *see also* 20 C.F.R. § 404.1527(d)(2). It is not clear from the *Record* if Dr. Hollifield was Plaintiff's treating physician, although it appears that he supervised the acupuncture study at the University of New Mexico in which Plaintiff participated.

*says* he is markedly impaired due to his PTSD.  (*R. at 189.*)  Second, the ALJ cited this provision of

Dr. Hollifield's letter in his discussion of the severity of Plaintiff's functional limitations and the Court

finds that substantial evidence supports the ALJ's conclusion that the rest of the medical evidence in

the *Record* does not show that Plaintiff was markedly impaired in many or most of his social, work

and family responsibilities.  (*R. at 15-17.*)  For example, neither Dr. Blacharsh nor Dr. Walker found

Plaintiff to be markedly limited in any area of functioning in their mental RFC assessments.

(*R. at 138-141, 152, 165-167, 178.*)  Dr. Blacharsh specifically found that Plaintiff's skills needed for

unskilled work were "less than markedly impaired."  (*R. at 140.*)  She concluded that Plaintiff,

"[s]hould be able to do routine work with limited social contact."  (*R. at 141.*)  Dr. Walker found that

Plaintiff was:

> [A]ble to work in multiple step types of employment which are
> marked by the absence of inordinately high levels of concentration
> demands.  He is able to carry out the demands of these types of
> employment under ordinary levels of supervision and within
> reasonable limits of persistence and pace.  Individual is further limited
> to brief and superficial contact with the general public.  He is able to
> manage only routine changes in the customary, unskilled work setting.

(*R. at 167.*)  Bruce Huyser and VA social worker Farrell Udell, who evaluated Plaintiff for the VA,

both diagnosed Plaintiff with PTSD that was "chronic" and "moderate."  (*R. at 215, 218,*

*respectively.*)  Additionally, although Bruce Huyser found that Plaintiff's PTSD symptomatology

appeared to have "significant effects on psychosocial functioning in terms of employment," he found

that it had "mild effects" on Plaintiff's activities of daily living.  (*R. at 216.*)  Consulting psychiatrist

Michael Gzaskow diagnosed Plaintiff with PTSD that was "chronic" and "severe" and noted that

Plaintiff had a difficult time relating to others due to his PTSD; but, he also noted that Plaintiff was

alert and cooperative, had logical speech, had no evidence of any organic or psychotic thought

pathology, denied suicidal ideation or plan although he admitted to suicidal thoughts in the past, had

average general intellectual functioning, was oriented with no deficits in memory, did calculations and

abstractions well, had an average general fund of knowledge, had insight and judgment that were fair

to good, could understand and follow directions, and could attend to simple tasks.  (*R. at 162-164.*)

There is no medical evidence in the *Record* that Plaintiff required medication for his PTSD, or that

he was ever hospitalized for PTSD.  Nor is there any medical evidence indicating that any treating

physician ever imposed work-related limitations on Plaintiff due to his PTSD.

   Thus, the Court finds that the ALJ properly considered Dr. Hollifield's opinion and discounted

its weight based on substantial, contradictory medical evidence in the *Record*.  It is error for an ALJ

to give a treating physician's opinion controlling weight, "if it is inconsistent with the other substantial

evidence in the case record."  *Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003), quoting

*Social Security Ruling 96-2p*, 1996 WL 374188, at *2.  It is also proper for an ALJ to discount a

physician's opinion based on the degree to which the opinion is supported by relevant evidence and

the opinion's consistency with the record as a whole.  *Id.* at 1300-1301, citing *Drapeau v. Massanari*,

255 F.3d 1211, 1213 (10th Cir. 2001).  In this case, the ALJ explained the weight he gave Dr.

Hollifield's opinion and his reason for doing so.  His reasoning is legally correct and supported by

substantial evidence in the *Record*.

## C.  VA Disability Decision

   Plaintiff argues that in assessing his RFC, the ALJ erred in failing to consider and weigh the

VA's decision that Plaintiff was disabled from work due to service-connected PTSD.  Plaintiff argues

that this case should be remanded for further proceedings to consider and weigh the VA disability

decision.

The *Record* shows that Plaintiff applied for VA disability benefits on June 25, 2002, and received a favorable decision on November 21, 2002.  (*R. at 124-126.*)  The VA decision determined that Plaintiff had service-connected PTSD with a seventy percent disability evaluation, effective June 25, 2002.  (*R. at 124.*)  As noted above, Plaintiff was granted an individual unemployability rating by the VA, effective December 9, 2002, although his combined evaluation rating remained at seventy percent.  (*R. at 49-57.*)  Disability determinations by the VA are not binding in a Social Security disability benefits case.  *See* 20 C.F.R. § 404.1504 ("a determination made by another agency that you are disabled . . . is not binding on [the Social Security Administration]").  This is because Social Security disability decisions must be based on social security law.  *Id.*  However, in the Tenth Circuit, a VA disability decision is entitled to weight and is evidence that an ALJ must consider in making his decision.  *See  Baca v. Department of Health and Human Services*, 5 F.3d 476, 480 (10th Cir. 1993).

In this case, the ALJ discussed the VA disability determination and its findings in the section of his decision regarding the nature of Plaintiff's impairments and whether or not they met or equaled listing impairments.  (*R. at 15.*)  It is apparent from the ALJ's decision that he reviewed and considered both the Initial Evaluation for Post-Traumatic Stress Disorder Exam report for Plaintiff, prepared by Bruce Huyser of the ABQ-VAMC,[18] and the Interim Treatment Update for Plaintiff, prepared by social worker Farrell Udell,[19] on which Plaintiff's VA disability determination was based. (*R. at 15-16.*)[20]  The ALJ also questioned Plaintiff at the administrative hearing about the VA's

---

[18]This report is in the *Record* as Exhibits 1F, 8F and 11F.  (*R. at 127-133, 182-188, 210-216.*)

[19]This update is in the *Record* as Exhibit 11F.  (*R. at 217-218.*)

[20]The evidence relied on by the VA in making Plaintiff's disability determination is described in the *Record*
(continued...)

determination and Plaintiff's VA benefits.  (*R. at 238, 243-245.*)  In his decision, the ALJ agreed with

the VA determination that Plaintiff suffered from PTSD, although he did not agree that Plaintiff was

disabled under standards governing Social Security disability determinations.  Based on the *Record*,

the Court finds that the ALJ's consideration of the VA's disability decision was not erroneous.

### D.  ALJ's Hypothetical Questions to VE

Plaintiff contends that the ALJ erred in his examination of VE Daniel Moriarty at the

administrative hearing by: (1) failing to include in his hypothetical questions to the VE many of the

functional limitations of Plaintiff's impairments that were documented in the medical evidence; and

(2) omitting from his hypothetical mental RFC for Plaintiff any specifics about the frequency, duration

or quality of workplace interactions of which Plaintiff was capable.  Plaintiff argues that these

omissions from the ALJ's hypothetical questions to the VE render the ALJ's decision that Plaintiff

can return to his past relevant work as a security guard unsupported by substantial evidence and

legally erroneous.

At the administrative hearing, the VE testified that he had reviewed the vocational documents

in the file and listened to Plaintiff's testimony at the hearing about his past relevant work.  (*R. at 262.*)

The VE testified that Plaintiff's past relevant work included work as a security guard, which he

described as semi-skilled, light work with a Dictionary of Occupational Titles Code of 372.667-034.

(*R. at 262-263.*)  The ALJ then asked the VE the following question:

> Q.  I want you to assume that the Claimant has no exertion limitations,
> that's [sic] he [sic] limited to non-public work, that he should have a

---

[20](...continued)
at 53 and 125.

> job that has no extensive interaction as part of the job with co-workers
> and supervisors.  Based upon that hypothetical, is - - can he do any
> past relevant work?

[To which the VE answered:]

> A.  The security guard would fit that profile.  That's 372.667-034.

(*R. at 263.*)

Plaintiff argues that this hypothetical question was in error because it failed to include the moderate limitations found in Dr. Blacharsh's RFC assessment of Plaintiff regarding his ability to work in coordination with or proximity to others without being distracted by them and his ability to engage in social interactions.[21]  The Court finds no such error in this hypothetical question.  The assumptions in the ALJ's question that Plaintiff was "limited to non-public work" and that he "should have a job that has no extensive interaction as part of the job with co-workers and supervisors," are entirely consistent with Dr. Blacharsh's narrative summary of Plaintiff's functional limitations.[22]  Thus, the ALJ's hypothetical question adequately reflected the moderate limitations found by Dr. Blacharsh.  *See Gay v. Sullivan*, 986 F.2d 1336, 1341 (10th Cir.1993) (VE testimony can provide substantial evidence to support ALJ's determination if claimant's impairments are adequately reflected in the hypothetical to the VE).  Plaintiff also argues that this hypothetical question was in error because it failed to include the moderate limitations found in Dr. Walker's RFC assessment of Plaintiff

---

[21]These limitations are in the *Record* at 138-139.

[22]Dr. Blacharsh's narrative summary was as follows: "In sum, 54 year old man with PTSD and severe impairments in functioning that do not meet or equal any listing.  Currently and projected to have intact capacity for understanding/memory and adaptability, and some limitations in capacity for sustained concentration and social interactions.  Should be able to do routine work with limited social contact."  (*R. at 140-141.*)

regarding his ability to maintain attention and concentration for extended periods, interact appropriately with the general public, and respond appropriately to changes in the work setting.[23]

However, even if this were the case, any error was subsequently remedied by the ALJ when he asked the VE another hypothetical question that included, almost verbatim, most of the limitations from Dr. Walker's narrative summary of Plaintiff's limitations. (*R. at 275-276.*)[24] In response to that question, the VE testified that Plaintiff would be able to perform the job of security guard and other jobs. (*R. at 276.*) Finally, Plaintiff argues that the ALJ failed to include Plaintiff's vision problems in the foregoing hypothetical question to the VE. However, this argument ignores testimony by the VE in response to the ALJ's questioning, that a person with vision adequate to obtain a driver's license could do the work of a security guard. (*R. at 273-274.*)[25]

Plaintiff also argues that a hypothetical question by the ALJ asking the VE to assume that Plaintiff was limited to simple, repetitive work was in error because it failed to include many of Plaintiff's functional limitations.[26] However, this question is not relevant to the ALJ's determination of disability at step four because it concerned information about other work available in the regional and national economies that is relevant at step five of the sequential evaluation process. The Court also finds no merit to Plaintiff's argument that the ALJ misstated a limitation in his hypothetical question to the VE by stating, in his decision, that he asked the VE whether a hypothetical person could perform Plaintiff's past relevant work as a security guard with a limitation of "little contact with

---

[23]These limitations are in the *Record* at 165-166.

[24]Dr. Walker's narrative summary is set forth herein-above at page 13. (*R. at 167.*)

[25]It is undisputed that Plaintiff had a driver's license and could, and did, drive.  (*R. at 240.*)

[26]This question is in the *Record* at 264.

co-workers, supervisors, and the public" (*R. at 17*), when the ALJ actually used the following words

in his hypothetical question to the VE: "he [is] limited to non-public work, [and] he should have a job

that has no extensive interaction as part of the job with co-workers and supervisors" (*R. at 263*).  The

Court finds that there is little substantive difference between these two descriptions of Plaintiff's

limitation.

### E.  Evidence Elicited from VE by Plaintiff's Counsel

Plaintiff argues that the ALJ failed to address testimony probative of disability that was given

by the VE at the administrative hearing in response to hypothetical questions posed by Plaintiff's

counsel and supported by substantial evidence.   These were hypothetical questions by Plaintiff's

counsel about jobs that a hypothetical worker could perform which contained limitations from the

mental RFC assessments by Drs. Blacharsh and Walker.[27]   Although the ALJ does not specifically

mention these questions and answers by Plaintiff's counsel in his decision, the Court finds that any

error in this regard was harmless.   First, the VE did not testify, in response to the hypothetical

questions by Plaintiff's counsel, that Plaintiff could not perform his past relevant work as a security

guard.[28]   Second, it is clear from the ALJ's decision and the record of the hearing that the ALJ

included limitations from the narrative explanation sections of Dr. Blacharsh's and Dr. Walker's

mental RFC assessments in his hypothetical questions to the VE about whether Plaintiff could

---

[27]These hypothetical questions by Plaintiff's attorney, and the VE's answers to the questions, appear in the
*Record* at 270-272.

[28]*Id.*

perform his past relevant work as a security guard and took the VE's affirmative answers into account in making his disability determination.  (*R. at 17, 140-141, 263, 167, 275-276.*)[29]

### F.  ALJ's Inquiry and Findings Regarding Plaintiff's RFC and Past Relevant Work

Plaintiff challenges the ALJ's finding that Plaintiff could perform his past relevant work as a security guard.  Specifically, Plaintiff contends that the ALJ failed to perform the analysis required by *Winfrey v. Chater*, 92 F.3d 1017 (10th Cir. 1996), at step four of the sequential evaluation process.  *Winfrey* requires a three-part analysis to determine if a claimant can perform his or her past relevant work.  This analysis requires that an ALJ: (1) evaluate the claimant's  physical and mental RFC; (2) determine the physical and mental demands of the claimant's past relevant work; and (3) determine if the claimant can meet the demands of his or her past relevant work given the limitations of the claimant's RFC.  *Winfrey*, 92 F.3d at 1023.  Plaintiff argues that the ALJ erred at all three steps of the *Winfrey* analysis.  The Court disagrees.

Plaintiff contends that the ALJ erred in assessing Plaintiff's mental RFC at step one of the *Winfrey* analysis because the ALJ's finding that Plaintiff "requires work where there is not extensive contact with co-workers, supervisors, and the public,"[30] fails to take into account all of his mental limitations and is not supported by substantial evidence.  This is essentially a reiteration of Plaintiff's previous arguments that the ALJ mischaracterized or ignored Plaintiff's mental limitations assessed by Dr. Blacharsh and Dr. Walker, rejected Dr. Hollifield's opinion that test results showed that Plaintiff said he was markedly impaired by PTSD, and failed to consider and weigh the VA's decision that Plaintiff was entitled to VA disability benefits due to service-connected PTSD.  The *Record*

---

[29]*See* discussion in Section  IV.A.1., above.

[30]*R. at 17.*

shows that the ALJ thoroughly reviewed the medical evidence of Plaintiff's PTSD, including the RFC assessments of Dr. Blacharsh and Dr. Walker, the opinion letter of Dr. Hollifield, the opinion of consulting psychiatrist Gzaskow, and the records of Plaintiff's treatment at ABQ-VAMC.[31]  The ALJ concluded, based on the medical evidence, that Plaintiff's mental impairment "has mildly restricted his activities of daily living, has caused moderate restriction in his ability to maintain social functioning, has caused no difficulties in maintaining concentration, persistence, or pace, and has resulted in no episodes of decompensation of extended duration."[32]  The ALJ also concluded that "[w]hile the claimant's PTSD may preclude him from working with others, it is not shown to be so severe as to be disabling" and, in assessing Plaintiff's RFC, determined that Plaintiff required work with limited social interactions.[33]  These conclusions by the ALJ are not in error and they are supported by substantial evidence.[34]

Plaintiff argues that the ALJ erred at step two of the *Winfrey* analysis by failing to ask Plaintiff or the VE about the specific demands of Plaintiff's past work as a security guard and by making no findings in his decision about the demands of that work.  However, the *Record* shows that the ALJ reviewed Plaintiff's descriptions of his past relevant work as a security guard[35] and questioned

---

[31]*R. at 15-17.*

[32]*R. at 16-17.*

[33]*R. at 17.*

[34]Contrary to Plaintiff's argument, the Court does not find there to be a significant difference between the ALJ's RFC determination that Plaintiff required "work where there is not extensive contact with co-workers, supervisors and the public," and the ALJ's limitations in his hypothetical question to the VE asking him to assume that Plaintiff was "limited to non-public work" and "should have a job that has no extensive interaction as part of the job with co-workers and supervisors."  (*R. at 17, 263.*)

[35]*See R. at 17, 65, 92-99.*

Plaintiff at the administrative hearing about his work as a security guard.[36]  The ALJ also obtained

testimony at the hearing from the VE that Plaintiff had past relevant work as a security guard, with

a Dictionary of Occupational Titles Code of 372.667-034, based on the VE's review of Plaintiff's

vocational documents in the file and Plaintiff's testimony at the hearing about his past relevant work.[37]

The VE testified that this was semi-skilled, light work which a hypothetical person with Plaintiff's

RFC could perform."[38]  In reliance on this evidence, the ALJ specifically found that Plaintiff's past

relevant work as a security guard did not require the performance of work-related activities precluded

by his limitations.[39]

    The cases cited by Plaintiff on this point are distinguishable.  In *Henrie v. United States*

*Department of Health & Human Services*, 13 F.3d 359 (10th Cir. 1993), unlike this case, there was

no inquiry by the ALJ regarding the demands of the claimant's past relevant work and the record was

"devoid of evidence" on this issue.  *Henrie*, 13 F.3d at 361.  In *Henrie* the case was remanded for

further development of the factual record regarding the demands of the claimant's past relevant work.

In *Winfrey v. Chater*, 92 F.3d 1017 (10th Cir. 1996), where the claimant suffered from a mental

impairment, the ALJ made no inquiry into, and no findings specifying, the mental demands of the

claimant's past relevant work.  *Id.* at 1024.  *Winfrey* was also remanded for further development of

the factual record.  *Winfrey*, 92 F.3d at 1026.  The present case is closer on its facts to the

unpublished case of *Westbrook v. Massanari*, 26 Fed. Appx. 897 (10th Cir. 2002).  In *Westbrook*,

---

[36]*R. at 244-249.*

[37]*R. at 262-263.*

[38]*Id.*

[39]*R. at 17.*

there was evidence of the demands of the claimant's past relevant work as an administrative assistant in a description she prepared and in testimony at the administrative hearing.  *Id.* at *903.  Based on that evidence, the ALJ found that the claimant could perform her past relevant work as an administrative assistant.  On appeal, the claimant argued that the ALJ failed to adequately discuss or consider the demands of her past relevant work in accordance with *Winfrey*.  *Id.* at *901.  The Tenth Circuit Court of Appeals affirmed the ALJ's assessment of the demands of the claimant's past relevant work in reliance on the evidence in the record and noted that:

> [O]ur holding in *Winfrey*, however, is not designed to needlessly constrain ALJs by setting up numerous procedural hurdles that block the ultimate goal of determining disability.  Rather, its concern is with the development of a record which forms the basis of a decision capable of review.

*Id.* at *903.  The Court of Appeals found there was substantial evidence in the record that the claimant could return to her past relevant work as an administrative assistant and refused to require more detailed findings regarding the demands of the claimant's past relevant work.  *Id.*

In this case, there was sufficient information in the evidence relied on by the ALJ to determine the demands of Plaintiff's past relevant work as a security guard.  Moreover, it was not error for the ALJ to rely on the VE's opinion in making this determination.  *See  Williams v. Barnhart*, No. 05-1298, 2006 WL 1109765 (10th Cir. April 27, 2006), at *6 (unpublished) (ALJ's incorporation of VE's testimony about demands of claimant's past relevant work sufficient to satisfy requirement that ALJ make specific findings); *see also Doyal v Barnhart*, 331 F.3d 758, 761 (10th Cir. 2003) (ALJ may rely on information supplied by a VE at step four).  Thus, the Court concludes that the ALJ properly evaluated the demands of Plaintiff's past relevant work as a security guard and his evaluation is supported by substantial evidence.

Finally, Plaintiff argues that the ALJ's conclusion at step three of the *Winfrey* analysis, that Plaintiff could perform his past relevant work as a security guard given the limitations of his RFC, is erroneous due to the ALJ's errors at steps one and two of the analysis. The Court finds no merit to this argument given its conclusions regarding steps one and two of the analysis.

### G.  Dr. Belchick's Vocational Report

After the administrative hearing concluded and the ALJ issued his decision, Plaintiff submitted a letter report to the Appeals Council dated September 15, 2004, that was prepared by vocational expert Gerald Belchick, Ph.D. (*R. at 226-232.*) In his report, Dr. Belchick opined that:

> In summary, Mr. Brenheiser cannot maintain/sustain successful work activities as a security guard or in virtually all other occupations, mainly because of the serious effects [of] Post Traumatic Stress Syndrome (PT9/25/04). These effects include an inability to maintain sufficient pace and persistence, react appropriately to routine work-related changes and stress, and deal appropriately with the public, co-workers and supervisors.

(*R. at 229.*) Plaintiff argues that the Appeals Council ignored Dr. Belchick's vocational report in deciding whether to grant review of the ALJ's decision and summarily denied review.

New and material evidence submitted to the Appeals Council must be considered by the Appeals Council if it "relates to the period on or before the date of the administrative law judge hearing decision." 20 C.F.R. § 404.970(b). If such evidence is submitted in a case, the Appeals Council must review the case "if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record," including the newly submitted evidence. *Id.* In this case, the *Record* shows that the Appeals Council did consider Dr. Belchick's report, although the Council denied Plaintiff's request for review of the ALJ's decision. In its Notice of Appeals Council Action, dated March 2, 2005, the Appeals Council stated:

> In looking at your case, we considered the reasons you disagree with the decision *and the additional evidence listed on the enclosed Order of Appeals Council*.  We found that this information does not provide a basis for changing the Administrative Law Judge's decision.

*R. at 5-6* (emphasis added).   The referenced "Order of Appeals Council" specifically listed Dr. Belchick's vocational report, describing it as the "September 15, 2004, Letter from Gerald Belchick, Ph.D., Vocational Expert."  *R. at 8*.  The Court has reviewed Dr. Belchick's report and the *Record* and finds that the Appeals Council did not err in considering Dr. Belchick's decision.

## V.  Conclusion

In conclusion, the Court **FINDS** that the Commissioner's decision is supported by substantial evidence in the *Record* and comports with relevant legal standards.  Accordingly, the Court will **AFFIRM** the decision of the Commissioner and **DENY** Plaintiff's motion.

**WHEREFORE, IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED** and Plaintiff's ***Motion to Reverse or Remand Administrative Agency Decision*** (*Doc. 11*) is **DENIED**.  A final order will be entered concurrently with this Memorandum Opinion and Order.

**IT IS SO ORDERED.**

*Lourdes A. Martínez*

**LOURDES A. MARTÍNEZ**
**UNITED STATES MAGISTRATE JUDGE**
**Presiding by Consent**

28